## James, et al. v. Walker.

(Decided March 16, 1912.)

### Appeal from Franklin Circuit Court.

JAS BREATHITT, JAS. GARNETT, Attorney General and C. H. MORRISS, Assistant Attorney General for appellant.

ERNEST WOODWARD, M. L. HEAVRIN and J. W. BOSTON for appellee.

DISSENTING OPINION BY CHIEF JUSTICE HOBSON.

By section 222, of the Constitution, militia officers may be appointed "for such terms not exceeding four years as the General Assembly may from time to time direct and establish." By section 2677, Kentucky Statutes, the term is fixed at three years. Appellee was appointed June 19, 1905, for a term of three years, and presumably has been re-appointed as it is alleged that he has continued in the service; but when he was re-appointed is not shown. By the statute in force when he was appointed his pay was fixed at $3 a day. (Kentucky Statutes, 1903, section 2705.) By the act of March 24, 1906, passed during his term, it was provided that commissioned officers when employed in active service with troops also in active service under the order of the Governor should receive the same pay as officers of the same grade of the United States Army. (See Acts 1906, p. 515.) At the time this act was passed officers of his grade in the United States army received $5 a day, and the effect of the act as it read when passed by the Legislature was to give appellee $5 a day when in active service with troops also in active service under the order of the Governor. His term for which he was appointed expired June 19, 1908, and a part of the time for which he seeks compensation was within this term. Section 235, of the Constitution, provides:

"The salaries of public officers shall not be changed during the terms for which they were elected."

Construing this section in Thomas v. Hager, 120 Ky., 428, we held that the Legislature could not indirectly bring about a change in an officer's salary after his election or appointment. Here during the term for which appellee was appointed the Legislature passed an act increasing his compensation. This act under numer-

ous decisions of this court could have no effect on his salary during the term he was then serving, but his salary must remain at $3 a day, the pay fixed when it began. Not only so but on May 11, 1908, and during his same term Congress, by an act, increased the pay of the officers of the regular army to $6.67 a day instead of $5 a day, the amount allowed when the act of 1906 was passed. This act of Congress cannot apply to appellee during the term he was then filling, for if the Legislature could not change his salary itself during his term, it could not authorize Congress to change it; for what it could not directly, it could not do indirectly. The constitutional provision is that the salary shall not be changed. It is violated whenever the salary is changed by whatever authority the change may be made. If the constitutional provision could be avoided by the Legislature authorizing some other body to fix the salary or to change it during the term, the constitutional provision would amount to nothing; for it might in all cases be evaded by the Legislature passing an act giving this power to some other body.

It is true only about eight days of the services sued for were within appellee's term which began before the act of 1906 was passed. But this cannot be passed over as a small matter for the reason that this is a test case, and all other officers of the militia will be paid according to the principle laid down in this case. As to these eight days appellee is not entitled to recover. It is said however that section 235 of the Constitution does not apply because of sections 220 and 221. They provide:

"The General Assembly shall provide for maintaining an organized militia." (Section 220.)

"The organization, equipment and discipline of the militia shall conform as nearly as practicable to the regulations for the government of the army of the United States." (Section 221.)

By section 220 the General Assembly is charged with the duty to provide for maintaining an organized militia; by section 221, the organization, equipment and discipline of the militia which it is to provide for maintaining, must conform as nearly as practicable to certain regulations of the United States. The United States has provided a complete Code of regulations for the organization, equipment and discipline of the army; these regulations provide how the army shall be organ-

ized; how it shall be disciplined; and how it shall be equipped. This is all. They have nothing to do with the pay of the army. They simply concern its organization, equipment and discipline, and the Constitution requires that the organization, equipment and discipline of the militia shall conform as nearly as practicable to these regulations. There is no reference to the pay of the militia. The words used in the Constitution are "organization, equipment and discipline." Organization includes the enrolling of the soldiers, election of officers, formation of companies, regiments, etc. Equipment includes supplies, arms, accouterments, uniforms, tents, etc. Discipline includes the rules for maintaining order and punishing violations of orders. This is all the words cover. To illustrate, the organization, equipment and discipline of the Louisville Legion may have conformed in all respects to the regulations for the government of the army of the United States for the past ten years, and it may have been at no time in active service under the orders of the Governor, or entitled to pay under the act of 1906. When we speak of a body of militia being organized there is no reference to its pay. The same is true when we speak of its discipline or equipment. It will not do to say that the organization, equipment and discipline of the militia do not conform to the regulations for the government of the army of the United States unless the officers of the militia are paid the same salary as the officers of the United States army; and if this cannot be maintained then it must be conceded that section 221 of the Constitution does not require the Legislature to fix the salary of the militia officers at the amount paid the officers of the United States army.

If section 221 refers to the pay of the militia then it is self-executing and from the adoption of the Constitution, the militia have been entitled to the same pay as men in the United States army. But nobody has ever thought this. When the Constitution was adopted pursuant to one of its provisions a commission was appointed to revise the statutes of the State. Two of the commissioners were distinguished members of the Constitutional Convention. They reported to the Legislature an act which fixed the pay of the officers and men of the militia without regard to the pay of the United States army. That Legislature was composed of not a

few members of the Constitutional Convention, and it adopted the act as thus reported to it by the commission. This view has been taken by every subsequent Legislature. If the opinion is sound then the act of 1906 is itself unconstitutional because it does not give the militia officers the same pay as like officers in the United States army when in active service, but only when in active service with troops also in active service under the order of the Governor. It applies only to the commissioned officers; it does not apply to the non-commissioned officers or the privates. Nothing shows more clearly the co-temporaneous construction of section 221 of the Constitution than the emergency clause of the act above referred to approved March 13, 1893, which is as follows:

"Whereas, recent changes in regulations adopted for the government of the armies of the United States provide for organizations not authorized by the existing militia laws of this Commonwealth and whereas, it is desirable that the organization of the Kentucky State Guards should conform as nearly as practicable to the regulations aforesaid; and whereas, the methods for the enforcement of discipline provided by the militia laws now in force are so defective as to make it difficult to regulate well the Kentucky State Guards, therefore, an emergency is hereby declared, and this act shall be in force and take effect from and after its passage." (See Acts 1893, p. 588.)

In addition to this, the act of Congress increasing the pay of officers of the regular army on May 11, 1908, or over two years after the Legislature had passed the act of 1906 cannot affect the pay of militia officers in this State. They are officers of the State of Kentucky and can only draw money out of the Treasury by virtue of the laws of the State. The Legislature cannot delegate to Congress its duty to fix the compensation of the officers of this State, or authorize Congress to change it from time to time as Congress may see proper. The Constitution vests this discretion in the General Assembly, and the delegated power cannot be delegated. Section 29 of the Constitution provides:

"The Legislative power shall be vested in a House of Representatives and a Senate, which, together, shall be styled the "General Assembly of the Comonwealth of Kentucky."

Section 230 also provides:

"No money shall be drawn from the Treasury, except in pursuance of appropriations made by law."

When it is provided that no money shall be drawn from the State Treasury except in pursuance of appropriations made by law, and it is further provided that the sole power of making laws is in the General Assembly, it necessarily follows that no money can be paid out of the State Treasury except in pursuance of laws passed by the General Assembly. The keys of the Treasury are placed in the hands of the General Assembly because they are the representatives of the people. They have no power to turn over this power to the Congress of the United States and say to Congress that you shall fix the pay of our militia officers, and whatever the amount you fix from time to time, they shall be paid out of the Treasury. This is to give to the United States Congress the keys of the State Treasury so far as militia officers are concerned. Congress is much more liberal in appropriations than our General Assembly. Its scale of prices is much higher, and it was never contemplated by the Constitution that the General Assembly should delegate to Congress the power to fix from time to time the salaries of the State officers. It cannot substitute for the representatives of the people, persons over whom they have no control, and who are responsible to them in no way. One of the purposes of the Constitution was that the representatives of the people who made the appropriations of public money should be responsible to the people, and this safeguard to the Treasury should not be removed.

The General Assembly may provide that the militia officers shall have the same pay as the officers of the United States army, and it may change the salaries as often as Congress changes the salaries, but it must make the changes itself. It cannot turn over to Congress a matter which the Constitution has confided to it alone. What the Legislature had in mind in passing the act of 1906 was the pay then allowed to officers in the United States army. They could not have in mind future acts of Congress and the statute should be construed as referring to the existing allowances. (Shindler v. Floyd, 118 Ky., 468.)

The matter is important, for there is no telling where it will lead. When Congress shall allow for disability received in the services or for horses or servants,

longevity and the like, are all these allowances to be paid out of the Treasury without any action by the Legislature approving them? If this may be done with the militia, may not all the other departments of the State government be run in the same way? And in this event of what avail are the safeguards the Constitution attempted to place around the State Treasury by placing its control in the hands of the General Assembly?

On the oral argument, the able counsel for the appellee did not attempt to maintain, that Section 221 is mandatory, or requires the General Assembly to fix the pay of the militia officers at the same rate as like officers of the United States army. He took the position that the Legislature must provide for maintaining a militia and that the duty is imposed upon it of making the organization, equipment and discipline conform as nearly as practicable to the regulations for the government of the army of the United States, that this duty being imposed upon it, it may in its discretion provide that the pay of the militia officers shall be at the same rate as that of like officers in the United States army. But this argument destroys itself. If under the Constitution the Legislature must provide for maintaining the militia, it must discharge the duty itself. The whole of the claim here sued for rests on the additional compensation allowed by the subsequent act of Congress. The Legislature has not established this rate of pay. Appellee has been paid $5.00 a day. He sues now for $6.67 a day. The Constitution required the Legislature to provide for maintaining an organized militia. It does not do this when it delegates the matter to Congress and the pay is fixed by a subsequent act of Congress. If Congress had cut down the pay to $2.50 instead of raising it to $6.67, would it be maintained that this would affect appellee? When Congress from time to time fixes the pay of our militia, in what sense of the word, does the General Assembly exercise the discretion committed to it, and to it alone, by the Constitution?

In Western & Southern Life Ins. Co. v. Com., 132 Ky., 292, it was held that the Legislature could not delegate to the Legislature of another State to determine the rate of taxation to be imposed on a taxpayer. How is that case to be distinguished from this? Can a matter be delegated to Congress which could not be delegated

to the Legislature of another State? If not, is it held that section 221 of the Constitution of itself gives the militia the same pay as the United States army receives? If so the act of 1906 is itself unconstitutional and all the militia are entitled to increased pay and have been since the Constitution was adopted. But this as shown above cannot be maintained.

I, therefore, dissent from the opinion of the court. Judge Miller concurs in this dissent.